REA2551332A
_____
Renewal of Number

**POLICY DECLARATIONS**

# Mount Vernon Fire Insurance Company
**1190 Devon Park Drive, Wayne, Pennsylvania 19087**
A Member Company of United States Liability Insurance Group

## No. REA2551332A

NAMED INSURED AND ADDRESS:

**THE NICHOLE SLINEY REALTY TEAM INC**
**108 NOTTINGHAM DR**
**RAYNHAM, MA 02767**

POLICY PERIOD: (MO. DAY YR.)  From:  02/07/2024  To:  02/07/2025

12:01 A.M. STANDARD TIME AT YOUR
MAILING ADDRESS SHOWN ABOVE

FORM OF BUSINESS:

BUSINESS DESCRIPTION:  Residential Sales, Real Estate Firm

| | |
|---|---|
| **IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.** | |

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.

| | PREMIUM |
|---|---|
| Real Estate Agents Professional Liability Errors and Omissions Coverage Part | $2,639.00 |
| **TOTAL:** | **$2,639.00** |

Coverage Form(s) and Endorsement(s) made a part of this policy at time of issue
### See Endorsement EOD (1/95)

Agent:  **JOHNSON & JOHNSON, INC. (1309)**
　　　　**PO Box 899**
　　　　**Charleston, SC  29402**

Broker:

Issued:  **01/05/2024 1:44 PM**

By: _____
　　　　　Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

UPD (08-07)

1

# EXTENSION OF DECLARATIONS

### Policy No. REA2551332A

Effective Date:    **02/07/2024**

12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS

## FORMS AND ENDORSEMENTS

**The following forms apply to the Real Estate Agents Professional Liability Errors And Omissions coverage part**

| Endt# | Revised | Description of Endorsements |
|-------|---------|----------------------------|
| Jacket | 07/19 | Policy Jacket |
| RE 311 | 09/15 | Insured Owned Real Property Amended Exclusion Endorsement |
| RE 337 | 04/17 | Discrimination, Lockbox and Open House Endorsement |
| RE 349 | 03/22 | Clarification Of Exclusions |
| RE-310 | 06-95 | Amendment of Deductible Endorsement |
| RE-318 | 02-98 | Professional Services Exclusion Endorsement |
| RE-319 | 11-09 | Contaminants, Pollutants, Hazardous Materials, Irritants, Toxic Substances, Pathological Conditions Endorsement |
| RE-324 | 04-00 | Internet Coverage Extension Endorsement |
| RE-346 | 08/15 | Failure To Disclose Mold And Other Organic Pathogens Endorsement |
| RE-347 | 08/15 | Privacy Breach Expense Endorsement |
| REA-340 | 08-11 | Additional Insured - Grantor Of Franchise |
| REA-345 | 06/15 | Pro Security+ Endorsement |
| USL-REA | 05-95 | Real Estate Agents Errors and Omissions Liability Policy |

2

# REAL ESTATE AGENTS PROFESSIONAL LIABILITY ERRORS AND OMISSIONS COVERAGE PART DECLARATIONS

**PLEASE READ YOUR POLICY CAREFULLY.**

## NOTICE

**THIS IS A CLAIMS MADE POLICY AND UNLESS OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS FORM IS LIMITED TO LIABILITY FOR CLAIMS WHICH ARISE FROM THE RENDERING OR FAILURE TO RENDER PROFESSIONAL SERVICES SUBSEQUENT TO THE RETROACTIVE DATE STATED IN THE DECLARATIONS  AND PRIOR TO THE CANCELLATION, TERMINATION, OR EXPIRATION OF THE POLICY PERIOD AND WHICH ARE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY IN WRITING DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF ANY.**

**No.  REA2551332A**

Effective Date:  **02/07/2024**

12:01 AM STANDARD TIME

ITEM I. NAMED INSURED AND PRINCIPAL ADDRESS

**THE NICHOLE SLINEY REALTY TEAM INC
108 NOTTINGHAM DR
RAYNHAM, MA 02767**

ITEM II. POLICY PERIOD: (MM/DD/YYYY)  From:   02/07/2024  To:  02/07/2025

## Real Estate Agents

ITEM III.   COVERAGE:

| | LIMITS OF LIABLITY: | | PREMIUM: |
|---|---|---|---|
| A. Professional Services | $2,000,000 | Each Claim | **$2,639** |
| Professional Services | $2,000,000 | In The Aggregate | **Included** |
| B. Discrimination | $250,000 | In The Aggregate | **Included** |
| C. Lock Box | $50,000 | In The Aggregate | **Included** |
| D. Mold Sublimit | Not Purchased | | |
| | | **$2,639** Total Policy Premium | |

ITEM IV.   DEDUCTIBLE:              $2,500               EACH AND EVERY CLAIM

ITEM V.   THE NAMED INSURED IS A(N):      .

ITEM VI.  RETROACTIVE DATE:          02/07/2023

If a date is indicated, this insurance will not apply to any negligent act, error, omission ro personal injury resulting in the rendering or failure to render Professional Services, including Discrimination, Lock Box, and Supplementary Coverage which occurred before such date.

ITEM VII.  Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue:

**See Endorsement EOD (01/95)**

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD. 3

**This page has been intentionally left blank.**

# INSURANCE

# POLICY

## UNITED STATES LIABILITY INSURANCE GROUP

A STOCK COMPANY

A BERKSHIRE HATHAWAY COMPANY

1190 Devon Park Drive
Wayne, PA 19087-2191
888-523-5545 – USLI.COM

This policy jacket together with the policy declarations, coverage forms and endorsements, if any, complete this policy.

The enclosed declarations designates the issuing company.

# INSURANCE POLICY

# Read your policy carefully!

**In Witness Whereof**, the company has caused this Policy to be executed and attested.  Where required by law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

President

| This endorsement modifies insurance provided under the following: |
| :---: |
| **REAL ESTATE ERRORS & OMISSIONS LIABILITY POLICY** |

## INSURED OWNED REAL PROPERTY AMENDED EXCLUSION ENDORSEMENT

It is hereby agreed that VIII. EXCLUSIONS, 20., is deleted in its entirety and replaced with the following:

20. purchase, sale, lease, management, development, subdivision or construction of **Residential Real Property** and **Commercial Real Property** by;
    a. an **Insured** as an owner or purchaser; or
    b. any entity in which an **Insured** has a financial interest; or
    c. any entity which has a financial interest in an **Insured**; or
    d. any entity under common financial control with an **Insured**.

    This exclusion does not apply to **Claims** arising from;
    a. the sale of a **Residential Real Property** developed and/or constructed by a party other than as described in a. through d., above in which an **Insured** has a financial interest; or
    b. the sale of a **Commercial Real Property** developed and/or constructed by a party other than as described in a. through d., above in which an **Insured** has less than twenty-five percent (25%) ownership interest; or
    c. the lease or management of **Residential Real Property** or **Commercial Real Property** developed and/or constructed by a party other than as described in a. through d., above in which an **Insured** has a financial interest.

    For purposes of the endorsement, the term **Residential Real Property** means land and structures situated thereon used or intended to be used exclusively for residential occupancy and classified as such under applicable municipal zoning codes or ordinances. **Commercial Real Property** means land and structures situated thereon used for or intended to be used exclusively for commercial purposes and classified as such under applicable municipal zoning codes or ordinances.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

This endorsement modifies insurance provided under the following:

**REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY**

## DISCRIMINATION, LOCKBOX AND OPEN HOUSE ENDORSEMENT

It is agreed:

INSURING AGREEMENTS, I. COVERAGES, is amended by the addition of the following:

**D.** OPEN HOUSE

Any **Claim** arising out of the destruction or loss of use of tangible property during an **Open House** provided that such **Claim** is caused by actual or alleged negligent acts, errors, omissions, or **Personal Injury** committed by any **Insured** during the **Policy Period** or after the Retroactive Date specified in the Declarations in the rendering of or failure to render **Professional Services** for others**.**

II.  LIMITS OF LIABILITY AND DEDUCTIBLE, **B.** and **C.**, are deleted in their entirety and replaced with the following:

**B.** Coverage B – Discrimination

The "Each Claim" and "In The Aggregate" limit of liability under this Policy for all **Damages** and **Claims Expenses** combined, for **Claims** covered under Coverage B – Discrimination, shall be equal to the Coverage A., Professional Services "Each Claim" and "In The Aggregate" LIMITS OF LIABILITY shown on the Policy Declarations and shall be a part of and not in addition to such Professional Services limits. If the Coverage A., Professional Services "Each Claim" and/or "In The Aggregate" limit exceeds 1,000,000, the Coverage B Discrimination limits shall not in any case exceed $1,000,000.

**C.** Coverage C – Lock Box

The maximum limit of liability under this Policy for all **Damages** and **Claims Expense** combined for **Claims** under Coverage C – Lock Box shall be $50,000, each claim and in the aggregate and shall be part of and not in addition to the Coverage A Professional Services, "In The Aggregate" LIMITS OF LIABILITY shown on the Policy Declarations.

II.  LIMITS OF LIABILITY AND DEDUCTIBLE is amended by the addition of the following:

Coverage D. Open House

The maximum limit of liability under this Policy for all **Damages** and **Claims Expense,** combined, for **Claims** under Coverage D. Open House shall be $50,000 each claim and in the aggregate and shall be part of and not in addition to the Coverage A Professional Services, "In The Aggregate" LIMITS OF LIABILITY shown on the Policy Declarations.

VII. DEFINITIONS, is amended by the addition of the following definition:

"**Open House**" means an advertised designated time period where multiple potential buyers have the opportunity to view the specified property that is listed for sale by any **Insured** while in the care, custody or control of any **Insured** but which property is not owned or

8

occupied by, or leased to, any **Insured** or any member of any **Insured's Immediate Family**.

VIII. EXCLUSIONS, **A.6.**, is deleted in its entirety and replaced with the following:

   **6.**   destruction of or loss of use of tangible property; however this exclusion shall not apply
         to **Claims** arising out of Coverage C.  Lock Box or Coverage D. Open House.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of
the **Named Insured's** policy and takes effect on the effective date of the **Named Insured's**
policy unless another effective date is shown.

---

This endorsement modifies insurance provided under the following:

**REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY**

---

# CLARIFICATION OF EXCLUSIONS

Section **VIII. EXCLUSIONS A. 8.** is deleted in its entirety and replaced with the following:

**8.**

a)  disputes involving an **Insured's** fee or charges; or

b)  personal profit or advantage to which the **Insured** is not legally entitled; or

c)  failure or inability to pay or collect premium, escrow or tax money; or

d)  conversion, misappropriation, commingling, improper use, theft, embezzlement or defalcation of funds, account information or other property; or

e)  voluntary parting with funds, account information or other property if induced to do so by any fraudulent scheme, trick, device or false pretense;

by any person or entity.

All other terms and conditions of this Policy are the same.  This endorsement is a part of the **Named Insured's** Policy. It takes effect on the effective date of **Named Insured's** Policy unless another effective date is shown.

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

This Endorsement modifies insurance provided under the following:

## REAL ESTATE ERRORS & OMISSIONS LIABILITY

## AMENDMENT OF DEDUCTIBLE ENDORSEMENT

It is hereby agreed that Section II. E. DEDUCTIBLE is deleted in its entirety and replaced with the following:

E.      DEDUCTIBLE

The Deductible amount stated in the Declarations shall apply to **Damages** and **Claims Expenses** and shall apply to each **Claim**. Upon demand by the **Company** the Deductible shall be paid promptly by the **Named Insured** to the persons or entities designated by the Company. The **Insured's** duties in the event of a **Claim** as described in Condition K. of this Policy apply irrespective of the application of the deductible amount. The Company shall have the right, but not the obligation, to advance sums on behalf of the **Named Insured** within the applicable Deductible.

All other terms and conditions of this Policy remain unchanged. This endorsement is a part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.

# UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This Endorsement modifies insurance provided under the following:

**REAL ESTATE AGENTS ERRORS & OMISSIONS LIABILITY**

### PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT

It is hereby agreed and understood that the **Company** shall not be liable to make any payment for **Loss** or **Defense Costs** in connection with any **Claim** made against any **Insured** based upon, arising out of, directly resulting from, in consequence of, or in any way involving the rendering or failure to render the following Professional Service(s):

Real estate agent/broker/independent contractor for any Claim brought against any Insured related to the selling of any rehabbed property owned less than 1 year by any Insured or by any company in which an Insured has an ownership interest.

All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of your Policy and takes effect on the effective date of your Policy, unless another effective date is shown.

**12**

RE-318 (2-98)                                                                 Page 1 of 1

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

**REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY**

## CONTAMINANTS, POLLUTANTS, HAZARDOUS MATERIALS, IRRITANTS, TOXIC SUBSTANCES, PATHOLOGICAL CONDITIONS ENDORSEMENT

It is hereby agreed that Section VIII. EXCLUSIONS, C. CONTAMINANTS, POLLUTANTS, HAZARDOUS MATERIALS, IRRITANTS, TOXIC SUBSTANCES, PATHOLOGICAL CONDITIONS EXCLUSION, is amended by adding the following exception:

This exclusion shall not apply to **Damages** or **Claims Expenses** resulting from a **Claim** from a third party arising solely from the unintentional failure of an **Insured,** while acting in the capacity of a Real Estate Agent or Broker**,** to advise such third party of radon, asbestos, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste (waste shall include materials to be recycled, reconditioned, or reclaimed) on, under or directly contiguous to real property owned by such third party.

All other terms and conditions of Exclusion C. remain unchanged.

Solely for the purposes of defining coverage under this Endorsement **Damages** and **Claims Expenses** do not include:

A. damages arising out of or in any way related to bodily injury, emotional distress, metal anguish, humiliation, pain, suffering, sickness, disease or death or any person or **Personal Injury**;

B. costs for testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of substances referenced in the exception above;

C. damages or **Claims Expense** arising from a **Claim** related to any governmental direction, or any other request to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, respond to to assess in any way the effects of any substance referred to in the exception above.

Section II. LIMITS OF LIABILITY AND DEDUCTIBLE, is amended by the following:

Subject to the **Company's** Limit of Liability specified in ITEM III. of the Policy Declarations hereof as In The Aggregate and for Each **Claim**, the **Company's** Limit of Liability for **Damages** including **Claims Expenses** in the aggregate and for each **Claim** involving actual or alleged financial loss incurred by a third party solely arising from the failure of an **Insured** to advise such third party of the substances noted in item 1), above, in the conduct of the **Insured's** duties as a Real Estate Agent or Broker shall not exceed $1,000,000.

All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of the **Insured's** Policy and takes effect on the effective date of the **Insured's** Policy unless another effective date is shown.

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This Endorsement modifies insurance provided under the following:

## REAL ESTATE ERRORS & OMISSIONS LIABILITY

## INTERNET COVERAGE EXTENSION ENDORSEMENT

It is hereby agreed that Section VII, DEFINITIONS, Definition J. **Professional Services**, is amended by the addition of the following:

**Professional Services** shall also mean services provided on or via the **Insured's** internet, e-mail, telecommunication or similar system by the **Insured** in the **Insured's** capacity as a real estate agent and/or broker, buyer's broker, real estate consultant or counselor, real estate appraiser or property manager.

All other terms and conditions of this Policy remain unchanged. This endorsement is a part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.

This endorsement modifies insurance provided under the following:

**REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY**

**Failure To Disclose Mold And Other Organic Pathogens Endorsement**

It is hereby agreed:

VIII. EXCLUSIONS, C. CONTAMINANTS, POLLUTANTS, HAZARDOUS MATERIALS, IRRITANTS, TOXIC SUBSTANCES, PATHOLOGICAL CONDITIONS EXCLUSION, is amended by adding the following exception:

This exclusion shall not apply to **Damages** or **Claims Expenses** resulting from a **Claim** (including **Claims** arising from the devaluation of real property) from a person or entity who is not an **Insured** arising solely from the unintentional failure of an **Insured,** while acting in the capacity of a Real Estate Agent or Broker**,** to advise such person or entity who is not an **Insured** of mold, fungus, bacteria or virus, including but not limited to their byproducts such as mycotoxin, mildew or biogenic aerosol on, under or directly contiguous to real property that is for sale or has been sold to such person or entity who is not an **Insured**.

Solely for the purposes of defining coverage under this Endorsement the **Company** shall not be liable to make payment for **Damages** or **Claims Expenses** in connection with any **Claim** made against any **Insured** arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

A.  bodily injury, emotional distress, metal anguish, humiliation, pain, suffering, sickness, **Personal Injury**, disease or death of any person; or

B.  the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of substances referenced in the exception to exclusion C. above; or

C.  any governmental direction, including fines and penalties or any other request to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, respond to to assess in any way the effects of any substance referred to in the exception to exclusion C above; or

D.  an alleged failure to discover or disclose any of the substances referred to in the exception to exclusion C. above if any **Insured** has ownership in the property for sale or which has been sold.

II. LIMITS OF LIABILITY AND DEDUCTIBLE, is amended by addition of the following:

Subject to the **Company's** Limit of Liability specified in ITEM III. of the Policy Declarations hereof known as "In The Aggregate" and  "Each **Claim**", the **Company's** Limit of Liability for **Damages** including **Claims Expenses** in the aggregate and for each **Claim** involving actual or alleged financial loss incurred by a person or entity who is not an **Insured** solely arising from the unintentional failure of an **Insured,**  while acting in the capacity of a Real Estate Agent or Broker, to advise such person or entity who is not an **Insured** of mold, fungus, bacteria or virus, including but not limited to their byproducts such as mycotoxin, mildew or biogenic aerosol on, under or directly contiguous to real property owned by such person or entity who is not an **Insured**, shall not exceed $1,000,000.

All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of the **Named Insured's** Policy and takes effect on the effective date of the **Named Insured's** Policy unless another effective date is shown.

RE 346 (08-15)                                                                                                     Page 1 of 1                    15

This endorsement modifies insurance provided under the following:

**REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY**

## PRIVACY BREACH EXPENSE ENDORSEMENT

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement. This endorsement is part of and subject to the provisions of the Policy to which it is attached.

I.   SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS

The following is a summary of Coverages and Limits of Expense coverage provided by this endorsement.

| COVERAGE | LIMIT OF EXPENSE COVERAGE | |
|---|---|---|
| Privacy Breach Expense | $25,000 | each **Privacy Breach** |
| | $25,000 | in the aggregate |

Retroactive Date: 02/07/2023

Deductible:          0

II.   COVERAGE:

Words shown in **bold** shall have the meaning provided in III. DEFINITIONS of this endorsement or as provided in the Real Estate Agents Errors and Omissions Liability Policy, as applicable.

Privacy Breach Expense

The **Company** will pay on behalf of the **Named Insured** for **Privacy Breach Expense** which is incurred by the **Named Insured** and which results from a **Privacy Breach**.   The **Privacy Breach** must first occur on or after the Retroactive Date stated above and be first discovered by an **Insured** during the **Policy Period** and reported to the **Company** during the **Notice Period.**

The **Insured** shall not incur any **Privacy Breach Expense** without (1) first reporting the **Privacy Breach** to the **Company** and (2) using a service provider of the **Company's** choice.

III. DEFINITIONS

**A.  Company** means the insurer identified in the Policy Declarations.

**B.  Key Personnel** means the individuals holding the following positions in the **Named Insured**

: President; owner; partner; members of the Board of Directors; executive officers, including the Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer; General Counsel, staff attorneys employed by the **Named Insured**; Chief Information Officer; Chief Security Officer; Chief Privacy Officer; managing member of a limited liability company; and any individual in a substantially similar position as those referenced above, or with substantially similar responsibilities as those referenced above, irrespective of the exact title of such individual, and any individual who previously held any of the above referenced positions.

**C. Notice Period** means the sixty (60) day period of time that the **Named Insured** has to notify the **Company** that a **Privacy Breach** has occurred commencing when the **Privacy Breach** is first reported to or discovered by **Key Personnel**.

**D. Privacy Breach** means the misappropriation, theft, loss of, unauthorized access, inadvertent disclosure or public exposure by the **Named Insured** of **Personally Identifiable Information.**

**E. Privacy Breach Expense** means the reasonable and necessary expenses listed in (1) through (8) below resulting from a **Privacy Breach** and incurred by the **Named Insured** or assumed under a written contract or agreement within one (1) year of the reporting of such **Privacy Breach** to the **Company**:

    (1) Development of a plan to assist the **Named Insured** in responding to a **Privacy Breach**; and

    (2) Development, printing, and mailing of legally required notification letters to those affected by a **Privacy Breach**; and

    (3) Development, printing and mailing of non-legally required notification letters at the **Company's** discretion, to those affected by a **Privacy Breach** when such **Privacy Breach** poses a significant risk of financial, reputational or other harm to the individual (s); and

    (4) Public relations or crisis management services retained for the **Named Insured** after notification letters are sent to mitigate any adverse effect on the **Named Insured's** reputation with customers, investors and employees resulting from a **Privacy Breach** that becomes public; and

    (5) Data analysis or forensic investigation to assess the scope of a **Privacy Breach**; and

    (6) Development of a website link for use by the **Named Insured** in communicating with persons affected by a **Privacy Breach** after notification letters are sent; and

    (7) Development and support of a Customer Relationship Management (CRM) system and call center for use by the **Named Insured** in communicating with persons affected by a **Privacy Breach** after notification letters are sent**;** and

    (8) Credit monitoring services for up to one year (or more if required by law)following a **Privacy Breach;** and

The above costs are subject to the limit of expense coverage for "each **Privacy Breach**" and "in the aggregate" for **Privacy Breach Expense** shown above.

17

**F. Personally Identifiable Information** means the following non-public information in the care, custody and control of the **Insured,** or those acting on behalf of the **Insured:**

(1) information, both in electronic and non-electronic form, concerning an individual(s) that would be considered "non-public information" within the meaning of Title V of the Gramm-Leach Bliley Act of 1999 (as amended) and its implementing regulations including but not limited to social security numbers or account numbers correlated with names and addresses; and

(2) personal information as defined in any U.S. federal, state or local privacy protection law governing the control and use of an individual's personal and confidential information, including any regulations promulgated thereunder; and

(3) protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) ("HIPPA") or the Health Information Technology for Economic and Clinical Health Act of 2009("HITECH") (Public Law 111-5), as amended, and any regulations promulgated thereto.

**Personally Identifiable Information** does not mean information that is available to the public unless such information is otherwise protected by law.

## IV. LIMITS OF EXPENSE COVERAGE AND DEDUCTIBLE

A. The Limit of Expense Coverage specified above as "in the aggregate" shall be the maximum limit for all expenses to which the coverage applies.

B. The Limit of Expense Coverage specified above as the Limit for "each **Privacy Breach**" shall be the maximum limit for expenses for each **Privacy Breach** to which the coverage applies.

C. The maximum Limit of Expense Coverage for **Privacy Breach Expense** provided by this endorsement shall be in addition to the LIMIT OF LIABILITY specified in the Policy Declarations as IN THE AGGREGATE for Insurance Agents and Brokers Professional Liability.

D. The **Company** shall be liable to pay only **Privacy Breach Expense** in excess of the Deductible shown at the beginning of this endorsement

E. Any one incident, interrelated incidents or series of similar or related incidents for which coverage is provided under this endorsement shall be treated as one incident subject to the maximum Limit of Expense coverage available under this endorsement at the time the incident(s) is first reported to the **Company** regardless of whether the incident(s) continues and expenses are incurred by the **Named Insured** in any subsequent **Policy Period(s).**

## V. ADDITIONAL EXCLUSIONS

In addition to the exclusions listed in Section VIII EXCLUSIONS of the Policy, the following exclusions apply.

The **Company** shall not be liable to make payment for cost or expense in connection with any **Privacy Breach** by any **Insured** for:

A. expense reimbursement resulting in any **Insured** gaining any profit, remuneration or advantage to which the **Insured** is not legally entitled; or

18

B.  expense(s) arising from any incident(s) of **Privacy Breach** which any **Insured** had notice before the inception date of this Policy; or any fact, circumstance, event, situation or incident which before the inception date of this Policy was the subject of any notice under any other similar policy of insurance or any future claims for expenses under this Policy based upon such pending or prior notice; or

C.  cost or expense covered, in whole or in part under any other coverage which is part of this Policy; or

D.  costs directly or indirectly related to reissuance of credit or debit cards or any other expense not specifically included within the definition of **Privacy Breach Expense.**

## VI. COVERAGE LIMITATIONS

The following terms, conditions and exclusions in the Real Estate Agents Errors and Omissions Liability Policy, do not apply to this endorsement:

Section X. EXTENDED REPORTING PERIOD.

Otherwise, the terms and conditions of the Real Estate Agents Errors and Omissions Liability Policy, shall apply where applicable to give effect to this endorsement.

Coverage provided by the **Named Insured's** Policy and any endorsements attached thereto are amended by this endorsement where applicable.  All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of the **Named Insured's** Policy and takes effect on the effective date of the **Named Insured's** Policy unless another effective date is shown.

# UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

**REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY**

### ADDITIONAL INSURED – GRANTOR OF FRANCHISE

### SCHEDULE*

Name of person or organization:

Effective Date:  02/07/2024
KELLERWILLIAMS REALTY

*Information required to complete this Schedule; if not shown on this endorsement, will be shown in the Declarations.

It is agreed:

**VII. DEFINITIONS**, **E. Insured** is amended with the addition of the following:

Any person or organization shown in the Schedule above is also an **Insured**, but only with respect to their liability as a grantor of a franchise to the **Named Insured.**

**VIII. EXCLUSIONS** is amended with the addition of the following with respect to the coverage provided by this endorsement:

1. any **Claim** brought by the Franchisor against any **Insured**; or
2. any **Claim** brought against the **Insured** solely because of the activity of the Franchisor or other franchisee(s).

All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of the **Named Insured's** Policy and takes effect on the effective date of the **Named Insured's** Policy unless another effective date is shown.

RE 340 (08-11)                                                                    Page    1    of    1    **20**

| This endorsement modifies insurance provided under the following: |
|:---:|
| **REAL ESTATE AGENTS ERRORS AND OMMISSIONS LIABILITY POLICY** |

## Pro Security+ Endorsement

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement. This endorsement is part of and subject to the provisions of the Policy to which it is attached.

I.  SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS
    The following is a summary of Coverages and Limits of Liability provided by this endorsement.

| COVERAGE | LIMIT OF LIABILITY |
|---|---|
| A. Transmission of Malicious Code Liability Coverage | Included in the EACH CLAIM and IN THE AGGREGATE policy limits shown on the Policy Declarations |
| B.  Unauthorized Access Liability Coverage | Included in the EACH CLAIM and IN THE AGGREGATE policy limits shown on the Policy Declarations |
| C.  Professional Reputation Restoration Expense Coverage | $50,000 EACH CLAIM $50,000 IN THE AGGREGATE |
| D. Pro-Bono Services Liability Coverage | Included in the EACH CLAIM and IN THE AGGREGATE policy limits shown on the Policy Declarations |

II.  COVERAGES:

Words shown in **bold** shall have the meaning provided in section IV. ADDITIONAL DEFINITIONS of this endorsement or as provided in the REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY, SECTION VII., DEFINITIONS, as applicable.  Where applicable, other terms used in this endorsement shall have the same meaning as defined in the REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY.

A. Transmission of Malicious Code Liability Coverage

It is agreed that Section I.  INSURING AGREEMENTS of the REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY is amended by the addition of the following:

The **Company** will pay on behalf of an **Insured, "Damages"** and **"Claims Expenses"** resulting from **Claims** first made against an **Insured** during the **Policy Period** or if applicable, during the Extended Reporting Period, arising out of the rendering or failure to render **Professional Services** which results in the transmission of **Malicious Code** from any **Named Insured Computer System** to any **Client Computer System**.

B. Unauthorized Access Liability Coverage:

It is agreed that Section I.  INSURING AGREEMENTS of the REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY is amended by the addition of the following:

The **Company** will pay on behalf of an **Insured,  "Damages"** and **"Claims Expenses"** resulting from  **Claims** first made against an **Insured** during the **Policy Period** or if applicable, during the Extended Reporting Period, arising out of the rendering of failure to render **Professional Services** that result in:

1. the destruction, deletion or corruption of electronic data belonging to a **Third Party** which is stored in the **Named Insured  Computer System**; or
2. the unauthorized taking, use or disclosure from the **Named Insured Computer System** of information about or belonging to **a Third Party**; or
3. a **Denial of Service Attack** against an Internet site(s) or computer(s) of a **Third Party**

but only if caused by the failure of an **Insured** to prevent unauthorized access to or use of a **Named Insured Computer System**.

C. Professional Reputation Restoration Expense Coverage

It is agreed that Section I.  INSURING AGREEMENTS of the REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY is amended by the addition of the following for the purposes of coverage under this endorsement only:

The **Company** will pay on behalf of the **Named Insured** for **Reputation Restoration Expenses** resulting from the actual publication in a newspaper, magazine or other general circulation print publication or on the radio, television or other electronic broadcast of a covered **Claim** under this policy. Payment of expenses shall be up to the **"Professional Reputation Restoration Expense"** Limit of Liability stated in the SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS above

The **Company** will pay on behalf of the **Named Insured** for **Reputation Restoration Expenses** only if all of the following conditions are met:

1. The **Named Insured** has (a) first reported the **Claim** to the **Company**, (b) obtained the **Company's** consent to payment of **Reputation Restoration Expenses** which consent will not be unreasonably withheld and (c) uses a reputation restoration service provider designated by the **Company**; and
2. The **Reputation Restoration Expenses** are directly related to a **Claim** covered under this Policy; and
3. **Reputation Restoration Expenses** relate to services rendered within ninety (90) days following the first publication of a covered **Claim**; and
4. **Reputation Restoration Expenses** are incurred for services provided, no more than twelve (12) months following the reporting of a covered **Claim.**

D. Pro-Bono Services Coverage:

It is agreed that Section I. INSURING AGREEMENTS of the REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY is amended by the addition of the following for the purposes of coverage under this endorsement only:

The **Company** will pay on behalf of an **Insured, "Damages"** and **"Claims Expenses"** resulting from **Claims** first made against an **Insured** during the **Policy Period** or if applicable, during the Extended Reporting Period, for any act, error or omission or **Personal Injury** committed by an **Insured** in the rendering or failure to render **Professional Services** for others for or on behalf of the **Named Insured** on a pro bono or gratuitous basis for charitable purposes  including such services provided electronically utilizing the Internet or a network of two or more computers.


III. LIMITS OF LIABILITY AND DEDUCTIBLE

Regardless of the number of **Insureds** under this policy or **Claim**(s) made or brought under this endorsement, the **Company's** liability is limited as follows:


For **Claims** arising under Section I, SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS of this endorsement, the Limit of Liability specified as EACH CLAIM shall be the maximum limit of liability for "**Damages**" and "**Claims Expenses**" for each **Claim** under Coverage A., B., and D.,  of this endorsement and shall be included in the EACH CLAIM policy limits shown in the Policy Declarations.


The Limit of Liability specified in Section I, SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS of this endorsement as IN THE AGGREGATE shall be the maximum limit of liability for all "**Damages**" and "**Claims Expenses** " for all **Claims** under this endorsement and shall be included in the IN THE AGGREGATE policy limits shown on the Policy Declarations.


The EACH CLAIM AND IN THE AGGREGATE Limit of Liability shown in Section I above for expenses provided under Coverage C. Reputation Restoration Expense, shall be in addition to the Limit of Liability specified in the Policy Declarations of the REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY COVERAGE FORM stated as "EACH CLAIM" and "IN THE AGGREGATE".

The DEDUCTIBLE shown on the Policy Declarations of the REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY applies to all coverage under this endorsement with the exception of Coverage C. Professional Reputation Restoration Expense Coverage.

## IV. ADDITIONAL DEFINITIONS

For purposes of coverage provided under this endorsement, the following definitions shall apply;

**Client Computer System** means any computer or connected input and output device, data storage device, networking equipment or back up facility that is owned/leased and operated by any **Third Party.**

**Denial of Service Attack** means intentional acts of a party other than an **Insured** that renders a **Third Party's** computer or network resources temporarily or permanently unavailable or unusable.

**Malicious Code** means any virus, Trojan Horse, worm or any other similar software program, code or script intentionally designed to insert itself into computer memory or onto a computer disk and spread itself from one computer to another.

**Named Insured Computer System** means any computer or connected input and output device, data storage device, networking equipment or back-up facility owned/leased and operated by the **Named Insured.**

**Reputation Restoration Expenses** means:
1. Reasonable and necessary expenses charged by a public relations firm or other reputation restoration firm designated by the **Company** to mitigate the adverse impact of a **Claim** on the **Named Insured's** business reputation;
2. Expenses incurred at the recommendation of a public relations firm or other reputation restoration firm to purchase media time or to print and mail written communications targeted to the general public and/or customers to mitigate the adverse impact of a **Claim** on the **Named Insured's** business reputation resulting from a **Claim** first made during the **Policy Period.**

**Third Party** means any person(s) other than an **Insured** for whom an **Insured,** in their capacity as such**,** provides **Professional Services**.

## V. ADDITIONAL EXCLUSIONS

In addition to those specified in the REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY, the following additional exclusions apply to this endorsement.

The **Company** shall not be liable to make payment for any of the following:

1. Expense(s) arising from any incident(s) of which any **Insured** had notice before the inception date of this Policy; or any fact, circumstance, event, situation or incident which before the inception date of this Policy was the subject of any notice under any other similar policy of insurance or any future claims for expenses under this Policy based upon such pending or prior notice.

2. The portion of any expense(s) covered under Coverage C. Professional Reputation Restoration Expense Coverage that is also covered under any other coverage in this endorsement or the REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY.

## VI. COVERAGE LIMITATIONS

The following sections of the REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY do not apply to Coverage C. Professional Reputation Restoration Expense Coverage, under this endorsement:

1. X. EXTENDED REPORTING PERIOD.

Otherwise, the terms and conditions of REAL ESTATE AGENTS ERRORS AND OMISSIONS LIABILITY POLICY shall apply where applicable to give effect to this endorsement.

Coverage provided by the **Named Insured's** Policy and any endorsements attached thereto are amended by this endorsement where applicable.  All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of the **Named Insured's** Policy and takes effect on the effective date of the **Named Insured's** Policy unless another effective date is shown.

# Real Estate Agents Errors and Omissions Liability Policy

**NOTICE: THIS IS A CLAIMS-MADE POLICY. PLEASE REVIEW THE POLICY CAREFULLY.** UNLESS OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR **CLAIMS** WHICH ARISE FROM THE RENDERING OR FAILURE TO RENDER PROFESSIONAL **SERVICES** SUBSEQUENT TO THE RETROACTIVE DATE STATED IN THE DECLARATIONS AND PRIOR TO THE CANCELLATION, TERMINATION, OR EXPIRATION DATE OF THE **POLICY PERIOD** AND WHICH ARE FIRST MADE AGAINST THE **INSURED** AND REPORTED TO THE COMPANY IN WRITING DURING THE **POLICY PERIOD** OR EXTENDED REPORTING PERIOD, IF ANY. THIS POLICY ALSO PROVIDES COVERAGE FOR THE PAYMENT OF **CLAIMS EXPENSES** IN ADDITION TO THE APPLICABLE LIMITS OF LIABILITY, EXCEPT WHEN **CLAIMS EXPENSES** ARE INCURRED BY THE COMPANY'S OBLIGATION TO PAY **CLAIMS EXPENSES** AS RESPECTS DISCRIMINATION AND LOCK BOX COVERAGES.

## PROVISIONS

In consideration of the payment of the premium, the undertaking of the **Insured** to pay the Deductible as described herein, and in reliance upon the statements made and information furnished by the **Insured** in the Application and in supporting materials, including any and all agreements, representations and any attachments thereto, and subject to the Limits of Liability stated in the Declarations, Exclusions, Conditions and other terms of this Policy, the Company agrees with the **Named Insured** as follows:

## INSURING AGREEMENTS

I.    COVERAGES

To pay on behalf of the **Insured** all sums in excess of the Deductible amount stated in the Declarations which the **Insured** shall become legally obligated to pay as **Damages** and to pay all **Claims Expenses** resulting from:

**A. PROFESSIONAL SERVICES AND PERSONAL INJURY**
any **Claim** arising out of any negligent act, error, omission, or **Personal Injury** committed by the **Insured** in the rendering or failure to render **Professional Services** for others.

**B. DISCRIMINATION**
any **Claim** alleging Discrimination by the **Insured** on the basis of age, sex, race, color, religion, disability, familial status, marital status, national origin or sexual preference; provided

always that such **Claim** arises out of any negligent act, error, omission, or **Personal Injury** committed by the **Insured** in the rendering of or failure to render **Professional Services** for others.

**C.** LOCK BOX COVERAGE
any **Claim** arising out of the destruction, of, or loss of use of, tangible property due to the distribution, maintenance, operation, or use of a Lock Box on property not owned or occupied by, or leased to, any **Insured** or any member of an **Insured's Immediate Family**; provided always that such **Claim** arises out of any negligent act, error, omission, or **Personal Injury** committed by the **Insured** in the rendering of or failure to render **Professional Services** for others.

With respect to Coverages A, B and C above:

**(1)** any negligent act, error, omission, or **Personal Injury** must be committed:

**a.** by the **Insured** in the rendering or failure to render **Professional Services** for others; and

**b.** during the **Policy Period** or after the Retroactive Date specified in the Declarations; and

**(2)** all **Claims** arising out of any negligent act, error, omission, or **Personal Injury** committed by the **Insured** in the rendering or failure to render **Professional Services** for others must be:

**a.** first made against the **Insured** during the **Policy Period** or Extended Reporting Period, if any; and

**b.** reported to the Company in writing no later than 60 days after the end of the **Policy Period** or, if applicable, during the Extended Reporting Period.

## II. LIMITS OF LIABILITY AND DEDUCTIBLE

**A.** Coverage A - **Professional Services** and **Personal Injury**
Subject to the Company's Limit of Liability for Total Policy Aggregate, the Limit of Liability of the Company for each **Claim** for **Damages** only under Coverage A shall not exceed the amount stated in the Declarations as Aggregate for Coverage A.

**B.** Coverage B – Discrimination
Subject to the Company's Limit of Liability for Total Policy Aggregate, the Limit of Liability of the Company for all **Claims** for **Damages** and **Claims Expense** under Coverage B shall not exceed $150,000 as stated in the Declarations as Aggregate for Coverage B.

**C.** Coverage C - Lock Box
Subject to the Company's Limit of Liability for Total Policy Aggregate, the Limit of Liability of the Company for all **Claims** for **Damages** and **Claims Expense** under Coverage C shall not exceed $25,000 as stated in the Declarations as Aggregate for Coverage C.

**D.** TOTAL POLICY AGGREGATE
The total combined Limit of Liability of the Company for all Coverages shall not exceed the amount stated in the Declarations as Total Policy Aggregate as a result of the sum of all:
1. Damages covered by this Policy; and
2. **Claims Expenses** covered under Coverages B and C.

**E.** DEDUCTIBLE
The Deductible amount stated in the Declarations shall apply to **Damages** only and shall apply to each **Claim**. Upon demand by the Company the Deductible shall be paid promptly by the **Named Insured** to the persons or entities designated by the Company.
The **Insured's** duties in the event of a **Claim** as described in Condition K of this Policy apply irrespective of the application of the deductible amount. The Company shall have the right, but not the obligation, to advance sums on behalf of the **Named Insured** within the applicable Deductible.

**F.** EXTENDED REPORTING PERIOD
The Limit of Liability for the Extended Reporting Period , if any, shall be a part of and not in addition to the amount stated as Total Policy Aggregate limit in the Declarations.

## III. SUPPLEMENTARY PAYMENTS

The Company will pay, in addition to the applicable limit of liability:

**A.** Up to $250 for loss of earnings to each individual **Insured** for each day or part of the day of such **Insured's** attendance at the Company's request at a trial, hearing or arbitration proceeding involving a civil suit against such **Insured** for covered **Damages**, but the amount so payable for any one or series of trials, hearings or arbitration proceedings arising out of the same negligent act, error or omission or **Personal Injury** shall in no event exceed $5,000; and

**B.** Up to $2,500 per **Policy Period** per **Insured**, but in no event more than $5,000 for all **Insureds** during any **Policy Period**, for attorney fees, and other costs, **expenses** or fees resulting from the investigation or defense of a proceeding before a state licensing board, local

real estate board or governmental regulatory body incurred as the result of a notice of a proceeding first received by the **Insured** and reported to the Company in writing no later than 60 days after the **Policy Period**, arising out of any negligent act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** by an **Insured** covered under this policy.

## IV. DEFENSE COSTS, CLAIMS EXPENSES AND SETTLEMENT

With respect to such insurance as is afforded by this Policy the Company shall:

**A.** have the right and duty to defend any **Claim** against the **Insured** seeking **Damages** to which this insurance applies even if any of the allegations of the **Claim** are groundless, false or fraudulent;

**B.** at its option, select and assign defense counsel;
however, the **Insured** may engage additional counsel, solely at their **Expense** to associate in their defense of any **Claim** covered hereunder;

**C.** have the right to investigate any **Claim** and/or negotiate the settlement thereof, as it deems expedient, but the Company shall not commit the **Insured** to any settlement without their consent. If the **Insured** refuses to consent to any settlement recommended by the Company and elects to contest the **Claim** or continue any legal proceedings in connection with such **Claim**, then the Company shall be relieved of any further duty to defend the **Claim**, and the liability of the Company for **Damages** and **Claims Expenses** shall not exceed the amount for which the **Claim** could have been settled as well as the **Claims Expenses** incurred by the Company or with the Company's consent up to the date of such refusal. Furthermore, the **Insured** shall not assume any obligations, incur any costs, charges, or expenses or enter into any settlement without the Company's consent;

**D.** not be obligated to pay any **Damages** or **Claims Expenses** or to defend, or continue to defend, any **Claim** or suit after the applicable limit of the Company's liability has been exhausted by the payment of **Damages** for **Professional Services** and **Personal Injury** coverages and/or by the payment of **Damages** and **Claims Expenses** incurred by the Company for Discrimination and Lock Box coverages;

**E.** have **Claims Expenses** incurred by the Company be in addition to the applicable Limit

of Liability except when **Claims Expenses** are incurred by the Company's obligation to pay **Claims Expenses** as respects Discrimination and Lock Box coverage.

## V. MULTIPLE INSUREDS, CLAIMS OR CLAIMANTS

The inclusion herein of more than one **Insured** or the making of **Claims** or the bringing of suits by more than one person or organization shall not operate to increase the Company's Limit of Liability. Two or more **Claims** arising out of a single act, error, omission or **Personal Injury** or a series of related acts, errors, omissions or Personal Injury shall be treated as a single **Claim**. Any such **Claim** whenever made shall be considered first made during the **Policy Period** in which the earliest **Claim** arising out of such act, error, omission or **Personal Injury** was first made and all such **Claims** shall be subject to a single Limit of Liability and one Deductible regardless of the number of **Insureds** against whom a **Claim** is made. If the **Insured** has a series of continuous, repeated or interrelated negligent acts, errors, omissions or **Personal Injury**, the first such negligent act, error, omission or **Personal Injury** must have been committed during the **Policy Period** or after the Retroactive Date, if any, and be reported to the Company in writing no later than 60 days after the end of the **Policy Period** or during Extended Reporting Period, if any.

## VI. MULTIPLE POLICIES

If this Policy and any other Professional Liability Insurance Policy issued by the Company or by its affiliates or subsidiaries to any **Insured** apply to the same **Claim** or **Claims**, the Company's Limit of Liability for all **Insureds** shall not exceed the highest applicable Limit of Liability available under any one Policy.

## VII. DEFINITIONS

The following defined words have a special meaning and are highlighted throughout this Policy by bold print.

**A.** **"Claim(s)"** means a demand received by the **Insured** for money, including the service of suit or institution of arbitration proceedings against the **Insured**, alleging a negligent act, error, omission or **Personal Injury** of the **Insured** in the rendering or failure to render **Professional Services**. **Claim** does not include proceedings seeking injunctive or other non-pecuniary relief or administrative proceedings before any national, state, regional or local board of real estate agents or any committee or sub-committee thereof, except as provided in Section III.B.

**B.** **"Claims Expenses"** means:

1. fees charged by (an) attorney(s) designated by the Company and all other fees, costs, and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, suit or proceeding arising in connection therewith, if incurred by the Company, or by the **Insured** with written consent of the Company, but does not include salary charges or expenses of regular employees or officials of the Company or the **Insured** or fees and expenses of independent adjusters;

2. all costs taxed against the **Insured** in such suits and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited, whether in court or otherwise, the part of the judgment which does not exceed the limit of the Company's liability thereof;

3. premiums on appeal bonds and premiums on bonds to release attachments in such suits, but not for bond amounts in excess of the applicable limit of liability of the Policy. The Company shall have no obligation to furnish any bond.

**C.** **"Damages"** means compensatory judgments, settlements or awards, but does not include punitive or exemplary **Damages**, fines or penalties, the return of fees or other consideration paid to the **Insured**, or that portion of any award or judgment caused by the trebling or multiplication of actual damages under any federal or state law, or matters deemed uninsurable under the law to which this Policy shall be construed.

**D.** **"Guaranteed Sale Listing Contract"** means a written agreement between the **Insured** and the seller of a property, in which the **Insured** agrees to purchase the property if it is not sold under the listing agreement, in the time frame specified by such agreement.

**E.** **"Insured"** means:

1. the **Named Insured**;

2. any past or present partner, officer, director, employee or independent contractor of the **Named Insured**, solely while providing **Professional Services** on behalf of the **Named Insured**;

3. the estate, heirs, executors, administrators and legal representatives of any **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would otherwise be provided coverage under this Policy.

**F.** **"Insured's Immediate Family"** means the **Insured's** spouse, parent, sibling, son or

daughter, including the spouse or offspring of any thereof.

**G.** **"Named Insured"** means the person or entity designated in Item 1 of the Declarations.

**H.** **"Personal Injury"** means:

1. false arrest, detention or imprisonment, wrongful entry or eviction, or other invasions of private occupancy, or malicious prosecution;

2. the publication or utterance of a libel, slander or other defamatory or disparaging material or a publication or an utterance in violation of an individual's right of privacy.

**I.** **"Policy Period"** means the period of time between the Inception Date shown in the Declarations and the effective date of termination, expiration, or cancellation of this Policy and specifically excludes any Extended Reporting Period hereunder, if any.

**J.** **"Professional Services"** means services performed by the **Insured** in the **Insured's** capacity as a real estate agent and/or broker, buyer's broker, real estate consultant or counselor, real estate appraiser, property manager, and incidental services rendered by any **Insured** as a notary public or as a member of a formal accreditation, standards review, or similar board or committee.

## VIII. EXCLUSIONS

**A.** This Policy does not apply to, and the Company will not defend or pay for, any **Claim** arising out of, directly or indirectly resulting from, based upon or in any way involving any actual or alleged:

1. bodily injury, emotional distress, mental anguish, humiliation, pain, suffering, sickness, disease or death of any person;

2. violation of any securities law or regulation, including but not limited to; the Securities Act of 1933 as amended or the Securities Act of 1934, as amended, or any state Blue Sky or Securities Laws or similar state or federal statute and any regulation or order issued pursuant to any of the foregoing statutes; or based upon common law principles of liability if made in connection with an actual or alleged violation of any of the aforementioned laws or Acts;

3. violation of state, federal or governmental anti-trust, price fixing, restraint of trade or deceptive trade practice laws, rules or regulations committed by, at the direction of, or with the knowledge of any **Insured**;

4. breach of fiduciary duty or inability or failure to collect, transfer or safeguard funds or for

the **Insured's** services and/or capacity as a fiduciary under the Employee Retirement Income Security Act of 1974 and its Amendments, or any similar State or local laws or any regulation or order issued pursuant thereto;

5. **Claim** seeking non-pecuniary injunctive or equitable relief;

6. destruction or loss of use of tangible property; however, this Exclusion shall not apply to **Claims** arising out of Lock Box coverage;

7. insolvency or bankruptcy of the **Insured**;

8. disputes involving an **Insured's** fee or charges, any personal profit or advantage to which the **Insured** is not legally entitled, or the failure or inability to pay or collect premium, escrow or tax money or the conversion, misappropriation, commingling or defalcation of funds or other property;

9. **Claim** made by any **Insured** against any other **Insured** unless such **Claim** arises solely out of **Professional Services** performed for the party in a broker-client capacity;

10. rendering or failure to render **Professional Services** by any **Insured** as an employee, owner, partner, stockholder, director or officer of any sole proprietorship, partnership, or corporation or other business enterprise not listed on the Declarations;

11. refusal to employ, termination of employment, or employment related coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, emotional distress, mental anguish or discrimination of employment, or other employment-related practices, policies, acts or omissions;

12. failure or omission to provide, effect or maintain any insurance or bond;

13. **Insured** making oral or written warranties or guarantees as to any future value of any real property;

14. performance of, referral to, or failure to perform services as a(n) auctioneer, tax advisor, insurance agent, insurance broker, mortgage banker, mortgage broker or consultant, escrow agent, title abstractor or title agent, home or pest inspector, lease broker, attorney, architect, engineer, accountant, property developer, builder, and/or construction manager;

15. liability of others assumed by any **Insured** under any contract or agreement, including

any warranty, unless such liability would have attached in the absence of such contract, agreement or warranty;

16. formulation, promotion, syndication, offer, sale or management of any limited or general partnership or real estate investment trust or any interest therein;

17. dishonest, fraudulent, criminal or malicious act or omission or deliberate misrepresentation committed by, at the direction of, or with the knowledge of any **Insured**.  However, this exclusion shall not apply to attorneys fees, and other costs, expenses and fees for which Supplementary Payments, Section III.B. of this Policy applies;

18. prior or pending litigation or to any **Claim** based upon or arising out of any negligent act, error, omission, **Personal Injury**, or circumstance which has been the subject of any notice given prior to the effective date of this Policy under any prior policy, or any negligent act, error, omission, **Personal Injury** or circumstance likely to give rise to a **Claim** of which any **Insured** had knowledge, or otherwise has basis to reasonably anticipate might result in a **Claim**, prior to the inception of the Policy (including, but not limited to, any prior **Claim** or possible **Claim** or circumstance referenced in the Application).

19. **Personal Injury** based on publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the **Named Insured**;

20. real property appraised, controlled, managed, operated, purchased or sold by an **Insured**, in which the same **Insured** or a member of the same **Insured's Immediate Family** have or may have a financial or ownership interest.  However, this exclusion will not apply to **Claims** arising out of the sale or purchase of real property by an **Insured** if all the following conditions are met:

   **a.** if the **Insured** or the same **Insured's Immediate Family** have or may have a twenty-five percent (25%) or more financial or ownership interest in such real property; and

   **b.** the property was acquired by the **Insured** under a written **Guaranteed Sales Listing Contract**; and

   **c.** the property was continually offered for sale by the **Insured** or the same **Insured's Immediate Family**; and

   **d.** the title to the property was held by the **Insured** or the same **Insured's Immediate Family** for less than three hundred sixty-five (365) days.

**B.** NUCLEAR ENERGY LIABILITY EXCLUSION
This Policy does not apply to, and the Company will not defend or pay for, any **Claim** or demand for contribution arising out of, directly or indirectly resulting from, based upon or in any way involving any radioactive, toxic or explosive properties of nuclear material which includes, but is not limited to, "source material", "special nuclear material", and "by product material" as those terms are defined in the Atomic Energy Act of 1954 and any amendments thereto and any similar provisions of any federal, state or local statutory or common law.

**C.** CONTAMINANTS, POLLUTANTS, HAZARDOUS MATERIALS, IRRITANTS, TOXIC SUBSTANCES, PATHOLOGICAL CONDITIONS EXCLUSION
This Policy does not apply to, and the Company will not defend or pay for, any **Claim, Damages, Claims Expenses**, loss, cost or expense arising out of, directly or indirectly resulting from, caused by, based upon , in any way involving, or in any way related to either:

**1.**  (a) The actual or alleged presence or absence in, on, under or otherwise connected to real estate, of, or

   (b) Any actual or alleged **Personal Injury** arising out of contaminants, pollutants, hazardous materials, irritants, or pathological conditions, including, but not limited to smoke, vapors, soot, fumes, acids, salt, alkalis, toxic chemicals, liquids or gasses, waste materials, lead, lead compounds, materials containing lead, other metals, radon, asbestos, urea formaldehyde, bacterial or microbial contamination or electromagnetic radiation;

**2.** The proximity of real estate to any landfill, surface impoundment, incinerator or site polluted or contaminated with contaminants, pollutants, hazardous materials, irritants or pathological conditions set forth in paragraph 1 above;

**3.** The abatement, mitigation, neutralization, removal or disposal of any of the contaminants, pollutants, irritants or other pathological conditions set forth in paragraphs 1. and 2. above; or

**4.** Any supervision, instruction, recommendation, warnings, advice, written reports or assurances given or which should have been given in connection with paragraphs 1., 2., and 3. above.

5. Any obligation to share **Damages** with or repay someone else who must pay **Damages** because of any **Claim, Damages, Claims Expenses**, loss, cost or expense as described in paragraphs **1.** through **4.** above.

## IX. AWARENESS OF LOSS AND WHEN CLAIM IS CONSIDERED TO BE FIRST MADE

If during the **Policy Period** or Extended Reporting Period, if any, the **Insured** first becomes aware of any negligent act, error, omission, or **Personal Injury** which was committed after the Retroactive Date and before the expiration or termination date of the Policy, and which might reasonably be expected to subsequently give rise to a **Claim** for which insurance is otherwise provided hereunder, and if the **Insured** gives written notice, which is received by the Company during the **Policy Period** or Extended Reporting Period, if any, then any **Claim** subsequently arising out of such negligent act, error, omission or Personal Injury shall be deemed to have been first made on the date on which such written notice is received by the Company.

Such written notice shall include:

1. particulars sufficient to identify the **Insured** and the potential claimant;
2. the specific negligent act, error, omission, or **Personal Injury**;
3. the **Damages** that have resulted or may reasonably be expected to result from such negligent act, error, omission, or **Personal Injury**;
4. the circumstance by which the **Insured** first became aware of such negligent act, error, or **Personal Injury**.

The **Insured** shall cooperate fully with the Company as provided in Condition **K.**, below, and any investigation conducted by the Company or its representatives shall be subject to the terms set forth in this Policy as though an actual **Claim** had been reported.

## X. EXTENDED REPORTING PERIOD

### A. COMMENCEMENT

In case of cancellation or non renewal of this Policy by the Company or the **Insured**, for any reason other than for non-payment of premium or Deductible, or failure to comply with the terms or Conditions of this Policy, the **Named Insured** shall have an automatic sixty (60) day Extended Reporting Period or have the right to purchase an endorsement extending the reporting period, for an additional premium of:

1. 60% of the full annual premium of this Policy, for a period of twelve (12) months; or
2. 95% of the full annual premium of this Policy, for a period of twenty-four (24) months; or
3. 110% of the full annual premium of this Policy, for a period of thirty-six (36) months following the effective date of such cancellation or non-renewal in which to give written notice to the Company of **Claims** first made against the **Insured** during the Extended Reporting Period for any negligent act, error, omission or **Personal Injury** occurring prior to the termination of the final **Policy Period**, and after the Retroactive Date, and subject to the Policy's terms, limitations, Exclusions and Conditions. This right shall terminate, however, unless written notice of such election together with the additional premium is received by the Company or its Authorized Agent from the **Named Insured** within sixty (60) days after the effective date of cancellation or non-renewal.

### B. RETIREE PROVISION

If the **Named Insured** is designated in Item 5 of the Declarations as:

1. an Independent Contractor and shall cancel or fail to renew this Policy due to retirement of the **Named Insured** from active business; or
2. a Sole Proprietorship and shall cancel or fail to renew this Policy due to retirement of the **Named Insured** from active business; or
3. a Partnership and shall cancel or fail to renew this Policy due to dissolution of the partnership, then the **Named Insured** shall have the right to have an endorsement issued extending the reporting period for this Policy for an additional premium of 125% of the full annual premium of this Policy, for an unlimited period following the effective date of such cancellation or non-renewal in which to give written notice to the Company of **Claims** first made against the **Insured** during this Extended Reporting Period for any negligent act, error, omission, or **Personal Injury** occurring prior to the termination of the final **Policy Period** and after the Retroactive Date, and subject to the Policy's terms, limitations, Exclusions and Conditions. This right shall terminate, however, unless written notice of election together with the additional premium is received by the Company or its Authorized Agent from the **Named Insured** within sixty (60) days after the effective date of cancellation or non-renewal.

**C.** PREMIUM

At the commencement of any Extended Reporting Period option, the entire premium shall be deemed earned, and in the event the **Insured** terminates the Extended Reporting Period before its term for any reason, the Company shall not be liable to return to the **Insured** any portion of the premium for the Extended Reporting Period.

**D.** LIMITS OF LIABILITY

The fact that the period during which **Claims** must be first made against the **Insured** and reported to the Company in writing is extended by virtue of any Extended Reporting Period option shall not in any way increase the Limit of Liability of this Policy. The Limit of Liability available under any Extended Reporting Period option shall be part of, and not in addition to, the Limit of Liability available under this Policy.

## XI. CONDITIONS

**A.** TERRITORY

This Policy only applies to negligent acts, errors, omissions or **Personal Injury** committed by, and suits or **Claims** brought against, the **Insured** in the United States, its territories or possessions.

**B.** PREMIUM

All premiums for this Policy shall be computed in accordance with the Company's rules, rates, ratings plans, premiums, and minimum premiums applicable to the insurance afforded herein. The **Named Insured** shall maintain records of the information necessary for premium computation and shall send copies of such records to the Company or any of its Authorized Agents relating to this insurance.

**C.** ENTIRE CONTRACT

By acceptance of this Policy, the **Insured** agrees that the statements in the Declarations, Application and any Supplemental Application(s) are the **Insured's** agreements and representations, that this Policy is issued in reliance upon the truth of such representations, and this Policy embodies all agreements existing between the **Insured** and the Company or any of its Authorized Agents relating to this insurance.

**D.** CHANGES

Notice to any agent, broker or representative, or knowledge possessed by any agent, broker, representative or any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from

asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsements issued by an Authorized Agent to form a part of this Policy.

**E.** ASSIGNMENT

Assignment of interest under this Policy shall not bind the Company until its consent is endorsed hereon; if, however, the **Named Insured** shall die, or be adjudged incompetent, such insurance as is afforded by the Policy shall apply to the **Named Insured's** legal representative, as the **Named Insured**, but only while acting within the scope of his or her duties as such legal representative and with respect to **Claims** previously reported or otherwise covered under this Policy.

**F.** AUDIT

The Company may examine and audit the **Insured's** books and records at any time during the **Policy Period** and within three (3) years after the final termination of this Policy, as far as they relate to the subject matter of this Policy.

**G.** REIMBURSEMENT OF THE COMPANY

While the Company has no duty to do so, if the Company pays **Damages** or **Claims Expenses**:

**1.** within the amount of the applicable Deductible; or

**2.** in excess of the applicable limit of liability; all **Insureds** shall be jointly and severally liable to the Company for such amounts. Upon written demand, the **Insured** shall repay such amounts to the Company within thirty (30) days thereof. Failure to pay any amounts indicated above may lead to Policy cancellation.

**H.** **NAMED INSURED** AUTHORIZATION CLAUSE

If there is more than one **Insured** under this Policy, the **Named Insured** named in Item 1 of the Declarations shall act for all **Insureds**. Notice of cancellation or non-renewal sent to the **Named Insured** shall serve as notice to all **Insureds**.

**I.** SUBROGATION

In the event of any payment under this Policy, the Company shall be subrogated to all the **Insured's** rights of recovery against any person or organization and the **Insured** shall execute and deliver instruments and

papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing to waive or prejudice such rights.

**J.** NOTICE OF CANCELLATION

This Policy may be cancelled by the **Named Insured** by surrender thereof to the Company or any of its Authorized Agents requesting a subsequent cancellation or by mailing to the Company or any of its Authorized Agents written notice stating when thereafter the cancellation shall be effective. Such cancellation shall be calculated on a short rate basis. This Policy may be cancelled by the Company or any of its Authorized Agents by mailing to the **Named Insured** at the address shown in this Policy written notice stating when not less than thirty (30) days thereafter such cancellation shall be effective. However, if the **Insured** has failed to pay a premium when due or has failed, after demand, to reimburse the Company for such amounts as the Company has paid in settlement or satisfaction of **Claims** or judgments or for **Claims Expenses** in excess of the applicable limit of the Company's liability or within the amount of the applicable Deductible, this Policy may be cancelled by the Company or any of its Authorized Agents by mailing a written notice of cancellation to the **Named Insured** at the address shown in this Policy stating when not less than ten (10) days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice either by the **Named Insured** or by the Company or its Authorized Agent shall be equivalent to mailing.

**K.** **INSURED'S** DUTIES IN THE EVENT OF **CLAIM** OR SUIT

As a condition precedent to the right of insurance coverage afforded herein, the **Insured** shall:

**1.** IN THE EVENT ANY **CLAIM** IS MADE AGAINST THE **INSURED**, GIVE IMMEDIATE WRITTEN NOTICE TO THE COMPANY AS SOON AS PRACTICABLE DURING THE **POLICY PERIOD**, BUT NO LATER THAN 60 DAYS AFTER THE EXPIRATION OF THIS POLICY OR DURING THE EXTENDED REPORTING PERIOD, IF ANY.

**2.** IN THE EVENT SUIT IS BROUGHT AGAINST THE **INSURED**, IMMEDIATELY FORWARD EVERY DEMAND, NOTICE, SUMMONS OR OTHER PROCESS RECEIVED BY THE **INSURED** OR BY THE **INSURED'S** REPRESENTATIVES.

**3.** Cooperate with the Company and, upon the Company's request, submit to examination and interrogation by a representative of the Company under oath if required; attend hearings, depositions and trials; assist in effecting settlement, securing and giving evidence, and obtaining the attendance of witnesses; assist in the conduct of suits, as well as in the giving of a written statement or statements to the Company's representatives, meeting with such representatives for the purpose of investigation and/or defense, and disclosing to such representatives all books and records requested by the Company; all without charge to the Company.

The **Insured** shall further cooperate with the Company and take such action as may be necessary to secure and effect any rights of indemnity, contribution or appointment which the **Insured** may have. The **Insured** shall not demand or agree to arbitration of any **Claim** made against the **Insured** without written consent of the Company. The **Insured** shall not, except at the **Insured's** own cost, make any payment, admit any liability, settle any **Claims**, assume any obligation or incur any expense without the written consent of the Company.

**L.** OTHER INSURANCE

This insurance shall be excess of and not contribute with other existing insurance, unless such other insurance is specifically written to be in excess of this Policy.

When it is determined that both this insurance and other insurance or self insurance apply to any **Claim** on the same basis, whether primary, excess or contingent, the Company shall not be liable under this Policy for a greater proportion of the **Damages** or **Claim Expenses** than the applicable Limit of Liability under the Policy for such **Damages** bears to the total applicable Limit of Liability of all valid and collectible insurance against such **Claims**.

When this insurance is excess, the Company shall have no duty under this Policy to defend any **Claim** or suit that any other insurer or self-insurer has a duty to defend.  However, the Company shall have the right to associate itself with the other insurer or self-insurer in the control, negotiation, defense or appeal of any **Claim** which in the opinion of the Company is or may be insured under this Policy.  If such other insurer or self-insurer refuses to defend, the Company shall be entitled to the **Insured's** right against all other insurers or self-insurers for any **Claims Expenses** incurred by the Company.

**M.** ACTION AGAINST COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, but not until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Company.

**N.** CONFORMITY TO STATUTES

The terms of this Policy which are in conflict with the statutes of the state wherein this Policy is issued are hereby amended to conform to such statutes.