UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NICHOLE SLINEY REALTY TEAM, INC., )<br>)<br>Plaintiff,            )<br>)<br>v.                      )<br>)<br>MOUNT VERNON FIRE INSURANCE )<br>COMPANY,                 )<br>)<br>Defendant.          )<br> | Civil Action No.<br>25-11145-FDS |

# MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is a dispute concerning an exclusion in an insurance policy. Jurisdiction is based on diversity of citizenship.

Defendant Mount Vernon Fire Insurance Company issued a professional liability insurance policy to plaintiff Nichole Sliney Realty Team, Inc. ("NSRT"). NSRT is a real-estate agency. It has been sued for copyright infringement based on the use of an architect's drawing in marketing materials. Defendant has declined to defend or indemnify it in that action based on an exclusion in the policy. The complaint seeks a declaratory judgment that defendant has a duty to defend and indemnify NSRT in the underlying action. Plaintiff has moved for partial judgment on the pleadings, and defendant has cross-moved for summary judgment.

For the following reasons, plaintiff's motion for partial judgment on the pleadings will be granted, and defendant's motion will be denied.

I.  **Background**

The following facts are undisputed unless otherwise noted.

A.  **Factual Background**

Nichole Sliney Realty Team, Inc. is a Massachusetts corporation with a principal place of business in Massachusetts. (Dkt. No. 1, at 3). Its principal business is the brokering of residential real estate. Mount Vernon Fire Insurance Company is a Nebraska corporation with a principal place of business in Pennsylvania. (*Id.*).

NSRT purchased a Real Estate Agents Errors and Omissions Liability Policy from Mount Vernon on January 5, 2024. (Dkt. No. 10 Ex. A, at 1). The policy period was from February 7, 2024, to February 7, 2025. (*Id.*). The policy required Mount Vernon to defend and indemnify NSRT against legal claims arising from, among other things, "any Claim arising out of any negligent act, error, omission, or Personal Injury committed by the Insured in the rendering or failure to render Professional Services for others." (*Id.* at 26). It also required Mount Vernon to "defend any Claim against the Insured seeking Damages to which this insurance applies even if any of the allegations of the Claim are groundless, false, or fraudulent." (*Id.* at 27).

Coverage under the policy was subject to several exclusions, only one of which is relevant here. (*See* Dkt. No. 18, at 5). Exclusion A.8(d) excludes coverage for

> disputes involving . . . (d) conversion, misappropriation, commingling, improper use, theft, embezzlement or defalcation of funds, account information or other property . . . .

(Dkt. No. 10 Ex. A, at 10).

As a part of its business, NSRT was involved in the marketing and sale of a newly-built home in Bridgewater, Massachusetts. (Dkt. No. 13 ¶ 4). In the marketing materials for the home, it allegedly used drawings and designs produced by the architect on the project. (*Id.* ¶¶ 5-6).

On September 27, 2024, the architect, Kiernan Joseph Liebl, Inc., d/b/a Royal Oaks Design, Inc., sued NSRT for copyright infringement. *See Kieran Joseph Liebl, Inc. v. EAP Constr., LLC*, No. 24-cv-12486-RGS (D. Mass.).

On October 4, 2024, NSRT requested that Mount Vernon defend it in that action. (Dkt. 12 Ex. C, at 3). On October 24, Mount Vernon denied the request, citing two policy exclusions—A.3 (which excludes claims based on violations of "anti-trust, price-fixing, restraint of trade or deceptive trade practice laws") and A.8(b) (which excludes claims for "personal profit or advantage to which the Insured is not legally entitled"). (Dkt. No. 10 Ex. B). NSRT responded with a demand letter, explaining, in its view, why the exclusions did not apply. (*Id.* Ex. C). On December 30, 2024, Mount Vernon renewed its refusal to defend NSRT in the underlying action. (*Id.* Ex. D). In that letter, Mount Vernon also cited exclusion A.8(d)—the exclusion at issue here—as a basis for denial. (*Id.* at 3).

B. **Procedural Background**

NSRT filed a complaint with the Bristol Superior Court on March 27, 2025, seeking a declaratory judgment concerning its entitlement to coverage under the policy (Count 1) and damages to cover legal expenses incurred due to the alleged breach of contract (Count 2). Defendant removed the case to this court.

NSRT has moved for judgment on the pleadings seeking partial judgment on the issue of Mount Vernon's duty to defend it in the underlying suit. If granted, NSRT suggests that the case be stayed until resolution of the underlying suit. *See Kieran Joseph Liebl, Inc.*, No. 1:24-cv-12486-RGS. Mount Vernon has moved for summary judgment on both counts.

II. **Standard of Review**

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). It differs

3

from a Rule 12(b)(6) motion primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole," including any answer filed by a defendant. *Aponte-Torres v. University of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006). A court may enter a judgment on the pleadings "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Id.* at 54.

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). "[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 (1986) (footnotes omitted) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

### III.  Analysis

Under Massachusetts law, an insurance policy is construed according to general principles of contract interpretation. *Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 4 (1st Cir. 2000).[1] The court begins with "the actual language of the polic[y], given its plain and ordinary meaning." *Id.*; *see also Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 457 (1999) ("Words in exclusionary clauses of insurance contracts should be construed in their usual and ordinary sense." (citation modified)). The court must "consider what

---

[1] It is undisputed that Massachusetts law applies to this matter.

an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Brazas Sporting Arms*, 220 F.3d at 4 (citation modified).

"[A] liability insurer owes a broad duty to defend its insured against any claims that create a potential for indemnity." *Doe v. Liberty Mut. Ins. Co.*, 423 Mass. 366, 368-69 (1996). An insurer is required to defend if the allegations in the underlying suit are "reasonably susceptible" to an interpretation that they allege a claim covered by the policy. *See Brazas Sporting Arms*, 220 F.3d at 4 (quoting *Merchants Ins. Co. of New Hampshire v. U.S. Fid. & Guar. Co.*, 143 F.3d 5, 8 (1st Cir. 1998)). The duty to defend is broader than the duty to indemnify; "the obligation to defend turns on the facts alleged in the complaint rather than the facts proven at trial." *Id.*

A liability insurer has no duty to defend a claim that is excluded from coverage. *Metropolitan Prop. & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co.*, 58 Mass. App. Ct. 818, 820 (2003). The insurer, however, bears the burden of establishing that an exclusion applies. *Id.* An exclusion should be read narrowly, and any ambiguities in an exclusion are strictly construed against the insurer. *Brazas Sporting Arms*, 220 F.3d at 4; *Hakim v. Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 281–282 (1997) ("'[E]xclusions from coverage are to be strictly construed,' and any ambiguity in the exclusion 'must be construed against the insurer.'") (quoting *Vappi & Co. v. Aetna Cas. & Sur. Co.*, 348 Mass. 427, 431 (1965)). "Ambiguity exists when the policy language is susceptible to more than one rational interpretation. But it does not follow that ambiguity exists solely because the parties disagree as to the provision's meaning." *Brazas Sporting Arms*, 220 F.3d at 4-5 (citations omitted).

Although defendant initially contended that two different exclusions applied, it now relies

5

on Exclusion A.8(d) to justify its denial of coverage.[2]  (Dkt. No. 12, at 5; Dkt. No. 18, at 5).  It contends that the copyright-infringement claim is excluded because it is a claim of "misappropriation" or "improper use" of "other property."  (Dkt. No. 12, at 5).  Put another way, the insurer's interpretation reads the terms "misappropriation" and "improper use" to cover infringement, and the term "other property" to include all types of property, including intellectual property such as copyrights.  That interpretation is clearly incorrect for multiple reasons.

To begin, all terms of a contract must be evaluated in the context in which they appear. *See CustomMade Ventures Corp. v. Sentinel Ins. Co.*, 2012 WL 4321060, at *4 (D. Mass. Sept. 17, 2012) (noting that a court should use "canons of *ejusdem generis* ['things of the same kind'] and *noscitur a sociis* ['it is known from its associates']" to "determine the meaning of a general term in the context of the other terms in the list"); *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (stating, in interpreting a civil statute, that "a word is known by the company it keeps . . . to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words"); *Fischer v. United States*, 603 U.S. 480, 487-90 (2024) (stating, in interpreting a criminal statute, that a broad catch-all statutory term must be interpreted in light of the narrower terms that precede it).  Thus, a contract provision that required a lessee to remove "equipment, ducts, fixtures, materials or other property" if they had become contaminated or hazardous referred only to moveable property, and not a concrete floor, despite the fact that a floor unquestionably constitutes a form of "other property."  *Prospect Hill Acquisition LLC v. Tyco Elecs. Corp.*, 328 F. Supp. 2d 179, 185 (D. Mass. 2004), *aff'd*, 414 F.3d 181 (1st Cir. 2005).

---

[2] Defendant's shifting position is itself strong evidence, at a minimum, that the exclusion is ambiguous and should be construed narrowly.

6

Here, the words immediately preceding the term "other property"—"funds" and "account information"—clearly refer to financial assets (or passwords or PINs to access "accounts," which are financial assets). In context, therefore, the term "other property" should be interpreted to refer only to other types of property that are similar to the ones enumerated—that is, other forms of financial assets.

Furthermore, if the term "property" is so broad that it includes all kinds of property, tangible and intangible, the two listed examples of property ("funds" and "account information") would be rendered superfluous. The Court cannot assume that those terms have no independent meaning. *See Performance Trans., Inc. v. Gen. Star Indem. Co.*, 983 F.3d 20, 26 (1st Cir. 2020) (stating that a court is "required to assume every word in an insurance contract was employed with a purpose." (citation modified)).

The terms "misappropriation" and "improper use" must also be construed in the context in which they appear. The other words at the beginning of the exclusion—"conversion, . . . commingling, . . . theft, embezzlement or defalcation"— refer to forms of intentionally tortious conduct. The terms "misappropriation" and "improper use" therefore should not be construed to cover claims arising out of conduct that is not intentional—including negligence or statutory violations, such as copyright infringement. Moreover, the exclusion does not include the word "infringement," which is the normal term used to describe a violation of copyright. If the insurer intended that the exclusion covered claims alleging copyright infringement, it could have said so in plain language.

Finally, the exclusion must also be read in the context of the likely business risks that a reasonable insured party would expect to be covered by the policy. As the First Circuit has explained:

7

> [U]nder Massachusetts law, provisions of an insurance agreement should be read in light of the purpose of the overall agreement. *U.S. Liab. Ins. Co. v. Benchmark Constr. Servs., Inc.*, 797 F.3d 116, 122-23 (1st Cir. 2015). This was an excess liability policy for a company that shipped, among other things, petroleum products. Reading the agreement . . . to exclude a major risk in PTI's line of business is inconsistent with the purpose of this insurance policy.

*Performance Trans*, 983 F.3d at 26.

Real estate agents use marketing materials extensively in the course of their business, including photographs of properties, floor plans, and other visual and written materials. By doing so, they run the risk that they may unwittingly use the copyright or other intellectual property of another, such as a photographer or architect. Moreover, real estate agents routinely enter residential properties for a variety of reasons, such as showing them to prospective buyers; by doing so, they run the risk that they may inadvertently trespass on the property of another or negligently create a hazard (for example, by leaving a door unlocked). Such risks are not the only type of risks for which real estate agents might seek liability insurance, but they are surely among the more prominent ones. If such activities constitute "misappropriation" or "improper use" of "property," then the exclusion would eliminate a substantial portion of the risks that the insured would expect to be covered. That is not how a reasonable insured would interpret the policy. *Peterborough Oil Co., Inc. v. Great Am. Ins. Co.*, 397 F. Supp. 2d 230, 238 (D. Mass. 2005) (exclusions should not be read such that they "effectively swallow the coverage").

In short, Exclusion A.8(d) does not apply to a claim involving infringement of copyright. No reasonable policy holder would read the exclusion to sweep so broadly as to cover such a claim. Furthermore, and at a bare minimum, the exclusion is ambiguous, and therefore should be construed strictly and narrowly against the insurer.

Accordingly, defendant has a duty to defend, and to indemnify, plaintiff in the underlying matter, notwithstanding the provisions of Exclusion A.8(d).

Plaintiff has requested costs and reasonable attorney's fees incurred in litigating this action. Under Massachusetts law, "[i]t is well settled that an insured is entitled to recover reasonable attorney's fees and expenses incurred in successfully establishing the insurer's duty to defend under the terms of the policy." *John T. Callahan & Sons, Inc. v. Worcester Ins. Co.*, 453 Mass. 447, 447 (2009) (citing *Preferred Mut. Ins. Co. v. Gamache*, 426 Mass. 93, 98 (1997)). Plaintiff will be directed to file a motion seeking such fees and expenses within 28 days.

## IV. Conclusion

For the foregoing reasons, the plaintiff's motion for partial judgment on the pleadings on defendant's duty to defend is GRANTED. Defendant's cross motion for summary judgment is DENIED. Plaintiff shall file a motion for reasonable attorney's fees and expenses, supported by appropriate affidavits and exhibits, within 28 days.

**So Ordered.**

Dated: February 10, 2026

/s/ F. Dennis Saylor IV  
F. Dennis Saylor IV  
United States District Judge