**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **NICHOLE SLINEY REALTY TEAM, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MOUNT VERNON FIRE INSURANCE COMPANY,**<br><br>**Defendant.** | ) | **Civil Action No. 25-11145-FDS** |

**AMENDED AND CORRECTED MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND EXPENSES AND FOR LEAVE TO FILE AN AMENDED COMPLAINT**

**SAYLOR, J.**

Defendant Mount Vernon Fire Insurance Company issued a professional liability insurance policy to plaintiff Nichole Sliney Realty Team, Inc. ("NSRT"). NSRT is a real-estate agency. It has been sued for copyright infringement based on the use of an architect's drawing in marketing materials. Defendant had declined to defend or indemnify it in that action based on a purported exclusion in the policy.

The complaint sought a declaratory judgment that defendant has a duty to defend and indemnify NSRT in the underlying action, and also claimed breach of contract. On February 10, 2026, the Court entered judgment in plaintiff's favor. On March 9, 2026, plaintiff moved for reasonable attorneys' fees and costs. On March 25, 2026, plaintiff also moved for leave to file an amended complaint.

For the following reasons, the motion for reasonable attorneys' fees and costs will be granted in part and denied in part, and the motion for leave to file an amended complaint will be denied.

## I. **Factual Background**

Nichole Sliney Realty Team, Inc., brokers residential real estate. (Dkt. No. 1, at 3). On January 5, 2024, NSRT purchased a Real Estate Agents Errors and Omissions Liability Policy from Mount Vernon. (Dkt. No. 10 Ex. A, at 1). The policy period was from February 7, 2024, to February 7, 2025. (*Id.*). The policy required Mount Vernon to defend and indemnify NSRT against legal claims arising from, among other things, "any Claim arising out of any negligent act, error, omission, or Personal Injury committed by the Insured in the rendering or failure to render Professional Services for others." (*Id.* at 26). It also required Mount Vernon to "defend any Claim against the Insured seeking Damages to which this insurance applies even if any of the allegations of the Claim are groundless, false, or fraudulent." (*Id.* at 27).

On September 27, 2024, an architectural firm, Kiernan Joseph Liebl, Inc., d/b/a Royal Oaks Design, Inc., sued NSRT for copyright infringement. *See Kieran Joseph Liebl, Inc. v. EAP Constr., LLC*, No. 24-cv-12486-RGS (D. Mass.).

On October 4, 2024, NSRT requested that Mount Vernon defend it in that action. (Dkt. 12 Ex. C, at 3). On October 24, Mount Vernon denied the request, citing two policy exclusions—A.3 (which excludes claims based on violations of "anti-trust, price-fixing, restraint of trade or deceptive trade practice laws") and A.8(b) (which excludes claims for "personal profit or advantage to which the Insured is not legally entitled"). (Dkt. No. 10 Ex. B). NSRT responded with a demand letter, explaining, in its view, why the exclusions did not apply. (*Id.* Ex. C). On December 30, 2024, Mount Vernon renewed its refusal to defend NSRT in the

underlying action. (*Id.* Ex. D). In that letter, Mount Vernon also cited exclusion A.8(d) as a basis for denial. (*Id.* at 3).

## II. Procedural Background

NSRT filed a complaint with the Bristol Superior Court on March 27, 2025, seeking a declaratory judgment concerning its entitlement to coverage under the policy (Count 1) and damages to cover legal expenses incurred due to the alleged breach of contract (Count 2). Defendant removed the case to this Court.

NSRT moved for judgment on the pleadings seeking partial judgment on the issue of Mount Vernon's duty to defend it in the underlying suit. Mount Vernon moved for summary judgment on both counts. The Court granted NSRT's motion, finding that Mount Vernon had a duty to defend NSRT in the underlying action, and denied Mount Vernon's motion for summary judgment. The Court also held that NSRT may seek reasonable attorneys' fees and costs, as under Massachusetts law, insureds are entitled to recover such fees incurred in successfully establishing the insurer's duty to defend under the terms of the policy.

NSRT has moved for reasonable attorneys' fees and costs. It has also moved for leave to file an amended complaint.

## III. Analysis

### A. Reasonable Attorney's Fees and Costs

Plaintiff requests attorneys' fees of $36,519.29 in connection with this action. It also requests attorneys' fees of $80,279.48 in connection with its defense of the underlying trademark dispute, *Kieran Joseph Liebl, Inc. v. EAP Constru., LLC*, No. 24-c-12486 (D. Mass.).[1]

[1] On June 10, 2026, plaintiff also submitted a Supplemental Affidavit detailing an additional $72,315.50 in attorneys' fees incurred since March 9, 2026. However, because plaintiff has not specifically moved for those fees, this Court does not reach the issue of whether or how they should be compensated.

Both the First Circuit and Massachusetts courts generally follow the so-called "lodestar" method for evaluating the reasonableness of a fee application. *See Tennessee Gas Pipeline Co. v. 104 Acres of Land*, 32 F.3d 632, 634 (1st Cir. 1994); *Fontaine v. Ebtec Corp.*, 415 Mass. 309, 325 (1993).[2]

The lodestar method involves "multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In determining that base figure, the first step is to calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. At this step, "the court has a right—indeed, a duty—to see whether counsel substantially exceeded the bounds of reasonable effort." *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 17 (1st Cir. 1988) (quotation omitted). The fee applicant bears the burden of proving that the number of hours expended is reasonable. *See Torres-Rivera*, 524 F.3d. at 340.

The second step is to determine a reasonable hourly rate as benchmarked to the "prevailing rates in the community" for lawyers of like "qualifications, experience, and specialized competence." *See Gay Officers League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001). In determining a reasonable hourly rate, a court must consider "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 951 (1st Cir. 1984). The applicant bears the burden

---

[2] A federal court sitting in diversity must apply state law in calculating reasonable attorneys' fees. *See Northern Heel Corp. v. Compo Indus., Inc.*, 851 F.2d 456, 475 (1st Cir. 1988). In light of the similar approaches used by Massachusetts courts and courts in the First Circuit, this Court will consider both federal and Massachusetts state precedent in evaluating the reasonableness of the request for fees. *See Joyce v. Town of Dennis*, 720 F.3d 12, 26 (1st Cir. 2013) (citing *Fontaine v. Ebtec Corp.*, 415 Mass. at 325).

to produce evidence establishing the prevailing rates in the community. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

The court may then adjust the lodestar amount upward or downward based on a number of factors. *See Spooner v. EEN, Inc.*, 644 F.3d 62, 68 (1st Cir. 2011). Those factors include

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Diaz v. Jiten Hotel Mgmt.*, 741 F.3d 170, 177 n.7 (1st Cir. 2013) (quoting *Hensley*, 461 U.S. at 430 n.3).

Here, the requested attorneys' fees should be reduced for the time spent on administrative tasks. The First Circuit has held that "clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them." *Lipsett v. Blanco*, 975 F.2d 934, 940 (1st Cir. 1992). As a result, hours spent performing such tasks should be compensated at a rate that is commensurate with the nature and complexity of the work. *See id.* Courts often apply differential rates to fees for "'core' tasks like 'legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders'" and "'non-core' tasks, which are 'less demanding,' such as 'letter writing and telephone conversations.'" *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015) (quoting *Brewster v. Dukakis*, 3 F.3d 488, 492 n.4 (1st Cir. 1993)). However, courts recognize that there is a "gray area"—in other words, that the distinction between "legal" and "administrative" may be "less than obvious." *E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 354 (D. Mass. 2013) (quoting *Lipsett,* 975 F.2d at 939-40). Therefore, "[a]s time spent on administrative and clerical tasks has

at least some value . . . courts are advised against discounting entries for such activities in their entirety." *Id.; see Lipsett,* 975 F.2d at 940 (noting that clerical tasks "should not be completely eliminated but should be compensated at a less extravagant rate").

Here, some of the tasks conducted by Marissa K. Thomas—specifically, sending certified mail, formatting responses, e-filing, filling out summons, and combining prior invoices—should be excluded because they are administrative. Based on their complexity, this Court will allow the time to be compensated at half the normal rate. *See, e.g.*, *Conservation L. Found., Inc. v. Patrick*, 767 F. Supp. 2d 244, 254 (D. Mass. 2011); *E.E.O.C.*, 934 F. Supp. 2d at 354.

Furthermore, the requested attorney's fees should be reduced because of the pervasive use of "block-billing." When attorneys bill their time using the block-billing method, a global attorney's fees reduction may be warranted. *See, e.g.*, *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008) (affirming district court's application of a 15% global reduction of fee award as a sanction for block billing). "Block billing" refers to "the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Conservation L. Found.,* 767 F. Supp. 2d at 253. Block-billing is "generally disfavored" because it "requires decipher[ing] on the judge's part," making it difficult to ascertain the reasonableness of billing practices. *E.E.O.C.*, 934 F. Supp. 2d at 355. "[D]istrict courts have broad discretion in reducing fee requests" when faced with billing practices such as block-billing. *Id.*

Here, more than half of plaintiff's hours were block-billed. Specifically, of the 207.4 hours billed, 108.3 hours, or 52%, were block-billed. (Dkt. No. 28, Ex. A). Therefore, a 15% global reduction in attorney's fees requests is reasonable and warranted. *See, e.g.*, *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 176 (D. Mass. 2015) (finding

that a "global deduction [for block-billing] is generally in the order of fifteen to twenty-percent," and imposing a 20% reduction when "[b]lock-billed entries account for slightly less than half of the post-award hours requested").[3]

**B. <u>Leave to File an Amended Complaint</u>**

Plaintiff seeks leave to amend its complaint to assert a claim for violation of Mass. Gen. Law c. 93A, § 11. Defendant opposes the motion, contending that plaintiff alleges no new, specific facts about defendant's conduct in support of the new claim, and that plaintiff's action is unduly delayed.

The Court agrees. First, plaintiff makes no new specific factual allegations in its amended complaint. Instead, in support of its new Chapter 93A claim, the complaint alleges that defendant (1) misrepresented policy provisions related to the coverage, (2) refused to pay claims without conducting a reasonable investigation, (3) failed to effectuate settlement of claims in which liability had become reasonably clear, (4) failed to provide reasonable explanation of the basis in the insurance policy in relation to the facts and applicable law, and (5) compelled plaintiff to institute this litigation to confirm defendant's obligations under the policy. Those are not new allegations. Indeed, as the plaintiff acknowledges in its motion, "while [defendant's] claims handling has been unfair from the start, [plaintiff] decided not to pursue a Chapter 93A

---

[3] While more than half of the billed hours were block-billed—which may have warranted a more significant global reduction in fees—relatively few of the block-billed entries covered substantial stretches of time. That mitigates the harm of block-billing because it reduces the uncertainty associated with allocating time among individual tasks. In other words, when block-billed entries list activities covering one hour as opposed to eight hours, courts are more easily able to assess the reasonableness of the time expended. *See In re Volkswagen*, 89 F. Supp. 3d at 177 (identifying "a single time entry of 9.7 hours [that] described four completely disparate kinds of work" as a "classic example[] of block-billing"); *Lincoln-Sudbury*, 2018 WL 2023517, at *4 (drawing attention to a single block-billing entry covering 6.7 hours). Therefore, this Court determines that a 15% reduction of requested attorney's fees—rather than a more significant reduction—is appropriate.

claim based on the extent of [defendant's] conduct as of the filing of its Complaint on March 27, 2025."

Second, granting plaintiff leave would result in undue delay and prejudice to the defendant. In the First Circuit, it is well-established that "undue delay in moving to amend, even standing alone, may be . . . an adequate reason" to deny a motion for leave to amend. *In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014) (citing *Foman*, 371 U.S. at 182; *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 51-52 (1st Cir. 1998)); *accord Calderon-Serra v. Wilmington Trust Co.*, 715 F.3d 14, 20 (1st Cir. 2013) ("Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend."). "[W]hen considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has [at the very least] the burden of showing some valid reason for his neglect and delay." *In re Lombardo*, 755 F.3d at 3 (second alteration in original) (quoting *Stepanischen v. Merchs. Despatch Transp. Corp.*, 722 F.2d 922, 933 (1st Cir. 1983)) (internal quotation marks omitted).

Here, plaintiff contends that there is no undue delay because discovery has not yet commenced. Although that is technically true, it does not accurately portray the state of the case. The Court has already held that defendant has a duty to defend plaintiff in the underlying action—a matter of contractual interpretation, and therefore a matter of law. As defendant's duty to indemnify arises from the same policy, it is very likely that there is no factual discovery needed to resolve that additional issue. Therefore, granting the amendment would require prolonging the case far beyond what was contemplated by the original action. Moreover, it would prejudice the defendant. As the defendant has indicated that it intends to appeal the Court's ruling, it would be delayed from doing so simply because plaintiff has chosen now—

more than a year after it filed its original complaint—to allege a claim that it acknowledges it could have put forth at the beginning.[4]

## IV. Conclusion

For the foregoing reasons, plaintiff's motion for attorneys' fees and costs is GRANTED in part and otherwise DENIED. Mount Vernon shall compensate NSRT in the amount of $99,059.02 for attorneys' fees. Plaintiff's motion for leave to file an amended complaint is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: November 19, 2026

[4] Moreover, as the complaint alleges breach of contract, plaintiff can already recover compensatory damages for the same conduct it alleges for its Chapter 93A claim. It is true that plaintiff would be able to potentially recover treble damages for unfair practices (which it likely cannot for breach of contract)—indeed, that may be why plaintiff has chosen to put forth the claim—but that is not a sufficient reason for the Court to grant leave when plaintiff has substantially delayed putting forth the claim.